IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRANSPORT WORKERS UNION OF     §
AMERICA, et al.,               §
                               §
            Plaintiffs,        §
                               §  Civil Action No. 3:05-CV-2369-D
VS.                            §
                               §
ALLIED AVIATION HOLDING        §
CORPORATION, et al.,           §
                               §
            Defendants.        §

MEMORANDUM OPINION
AND ORDER

In this action seeking a declaratory judgment that defendants
violated the terms of a collective bargaining agreement and
requesting an injunction requiring defendants to submit to final
and binding arbitration certain grievances filed by union members,
plaintiffs move for summary judgment. The court concludes that
plaintiffs have met their summary judgment burden as to one
grievance but not as to four others, and it grants in part and
denies in part plaintiffs' motion.

I

Plaintiffs Transport Workers Union of America, AFL-CIO and Air
Transport Local 513, Transport Workers Union of America, AFL-CIO
(collectively, "the Union") and defendants Allied Aviation Holding
Corporation and Allied Aviation Fueling of Dallas, LP
(collectively, "Allied") have been parties to a collective

bargaining agreement ("CBA") for several years.[1]  The CBA includes procedures for processing grievances that assert violations of the CBA.

Article 28, entitled "Compliance and Enforcement," sets forth the contractual terms regarding grievances and requests for arbitration related to these grievances.  Article 28(f) provides that a grievance must be filed within seven days from the date of the alleged violation.[2]  Allied must then respond to the grievance within seven days, or it is deemed admitted and the grievance is

---

[1]The court recounts the evidence in a light favorable to Allied as the summary judgment nonmovant and draws all reasonable inferences in its favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[2]Article 28(f):

> Any employee who has a grievance, or a claim of unjust treatment involving the interpretation, application, or performance of this Agreement may, within seven (7) days of such grievance, complaint, or claim of unjust treatment, submit his grievance to the department head who shall thereupon either hear the same, or designate a representative to hear the same, and within four (4) days after receipt by the Company of such submission in writing, a hearing shall be held, notice of which shall be given by telegram or by letter mailed at least twenty-four (24) hours prior thereto, and addressing such telegram or letter to the Union and to the employee at his last known address shall be sufficient.  If the grievance is not answered within seven (7) days by the Company, the grievance is granted by default.

P. App. 35, 51.

granted by default.  This is referred to as the first step.

If the grievance is denied, the second step provides that the grievant may request a hearing and decision from the Chief Operating Officer ("COO").  If the grievant does not request second step review, the first step decision stands.  The Union and Allied disagree about whether there is a deadline at the second step for the grievance to be presented to the COO.  It is clear, however, that once the COO receives the written grievance submission from the Union, he must hold a hearing within four days of the date the grievance was presented.

Under Article 28(g) of the CBA,[3] if the grievance is denied

---

[3]Article 28(g):

> If the Union is not satisfied with the disposition of such grievance or complaint made as provided in paragraph (f) last above, or in case there is any dispute between the parties hereto arising out of this Agreement or contract then, in any such case, at the written request of the party hereto desiring arbitration as herein provided, given to the other party hereto within fifteen (15) days after such disposition of such grievance or complaint as provided in paragraph (f) above, the matter shall be submitted for decision to an arbitrator who shall be selected from the three name arbitrators selected by the Company and the Union.  The decision of said arbitrator shall be final and binding upon both the Company and the Union.  The arbitrator shall not have the power to amend, modify, add to nor subtract from the terms of this Agreement.  The expenses of the arbitrator shall be borne equally by the Union and the Company.

after the second step hearing, the grievant may at the third step make a written request for arbitration, which must be made within 15 days of the second step decision. This request must be received by the company representative——in this instance, Judy Brandt ("Brandt")——within the 15-day deadline. Arbitration can occur only if both steps are timely completed.

Before February 2005, to promote a good working relationship between the parties, they generally complied with the terms of Article 28, but if one party missed a deadline in the grievance procedure, the mistake was forgiven by the other party. According to the Union, the parties did not limit the time when, or the method by which, the Union was required to request arbitration. This allowed time after the COO's decision for Brant and the Union Vice President handling the grievance to fully discuss settlement and for the Union Vice President to investigate and evaluate whether the grievance merited arbitration, without being bound by the 15-day deadline to request arbitration. The Union maintains that, before June 2005, Allied had never refused requests to arbitrate a grievance that were made after the 15-day deadline.

Allied contends that although the Union may sometimes have notified Brandt orally that it intended to arbitrate a particular grievance, the Union always followed up its oral notice with a

---

P. App. 35, 51-52.

written arbitration request. The Union cites examples of grievances that proceeded to arbitration, in which Allied followed the parties' past practice and did not require the Union to comply with Article 28(g)'s requirement that arbitration requests be made within 15 days of the COO's second step decision; in which grievances proceeded to arbitration, or were settled before arbitration, even though the Union's letter requesting arbitration was mailed to Allied before, but not received by, the fifteenth day; and in which a grievance proceeded to arbitration based only on an oral request to arbitrate.

Allied maintains that the "occasional forgivenesses" of the deadlines changed in February 2005, when a union member, Tristian Fernandez ("Fernandez"), was terminated after he drove a tanker truck into an airplane, causing damage. Fernandez filed a grievance requesting to be reinstated with full back pay, seniority, and benefits. Allied failed to timely respond to the grievance. After receiving the first step decision, Stoney Lowrance ("Lowrance"), a Union steward, informed Gary Shiflet ("COO Shiflet"), Allied's COO during the events giving rise to this litigation, that the response was untimely under Article 28 and that the Union was requesting that Fernandez be returned to work. Allied asserts that this was the first time the Union had required that Allied strictly comply with the deadlines of Article 28. Brandt spoke with Union President Mark Nelson ("Nelson"), who

advised her that Fernandez had been returned to work because Allied failed to meet the deadline prescribed by Article 28. Brandt confirmed with Nelson that she now understood that the "rules had changed" and that the parties would be expected to comply strictly with the deadlines of Article 28. Thus according to Allied, in February 2005 the Union changed the parties' practice by insisting on strict compliance with the deadlines of Article 28.

Allied terminated Patrick Sanford ("Sanford") on April 15, 2005, and the Union timely grieved his termination. The final second step disposition occurred on April 21, 2005, when COO Shiflet affirmed the termination and denied reinstatement. The Union decided to request arbitration, and it alleges that within one to two days after the grievance was denied, Nelson advised Brandt by telephone that the Union would request arbitration. The Union maintains that on May 5, Nelson again spoke to Brandt by telephone and advised her that the Union intended to arbitrate the Sanford grievance. Allied contends that the Union failed to make a written request within 15 days of Shiflet's second step disposition of the grievance, and that no Union member contacted Brandt, orally or in writing, within 15 days of the decision. The Union argues that Union Second Vice President Brian Oyer ("Oyer") mailed a letter confirming the Union's request, but that the letter was returned undelivered on May 23, 2005, and that Oyer then mailed a second letter to Brandt, stating the Union's intentions.

On April 24, 2005 Lowrance filed a grievance regarding a change to the policy by which Allied employees were treated when reporting an injury, including a new requirement that employees take a drug test when reporting an injury or when returning to work after an absence due to an injury or otherwise. Joe Correa ("Correa") denied the grievance on April 25, 2005, and the Union timely requested second step review. COO Shiflet conducted a hearing on May 3, 2005 and denied the grievance. Allied maintains that no Union member contacted Brandt, orally or in writing, within 15 days of COO Shiflet's decision, to request arbitration of the grievance. The Union maintains that Nelson orally advised Allied during a May 5, 2005 telephone conference with Brandt that it had decided to request arbitration. Thereafter, on May 20, 2005 Oyer followed up Nelson's oral request with a letter mailed to Brandt confirming the Union's request to arbitrate the Lowrance grievance.

On June 1, 2005 Brandt advised Nelson during a telephone conference that, based on the advice of its attorney, Allied had decided to refuse to arbitrate the Sanford and Lowrance grievances because the Union's requests for arbitration were untimely under Article 28(g). The Union maintains that the Lowrance and Sanford grievances were the first ones involving Allied and the Union in which Allied failed to the follow past practices and refused to arbitrate grievances on the procedural ground that arbitration had not been requested in writing and/or within 15 days of the COO's

decision.

On May 10, 2005 Allied terminated Cody Brackeen ("Brackeen") for failing to submit to a drug test after being involved in an accident resulting in substantial damage to company property. Brackeen filed a grievance of his termination on May 12, 2005. Correa denied the grievance on May 16, 2005, and on May 23, 2005 COO Shiflet received a request for a second step hearing. The hearing was conducted the same day, and COO Shiflet denied the grievance and upheld the termination. Allied maintains that Brandt did not receive a written request for arbitration of this grievance within 15 days of the decision. The Union asserts that on June 8, 2005, the same day Oyer received the second step answer at the Union Hall, he mailed a letter to Brandt requesting arbitration of the Brackeen grievance and asking that Brandt contact him to arrange the arbitration, and that the certified mail receipt shows that Brandt received the letter on June 14.

At the time of the Brackeen grievance, Oyer was aware that Allied was refusing to follow the parties' past practice regarding requests for arbitration, and that Allied was positing that the Union was required to request arbitration in writing within 15 days of the disposition of the grievance at the second step. Because June 8 was 13 days from May 26——the date of the COO's decision at the second step——the Union maintains that Oyer believed he was complying with Article 28(g). The Union also contends that there

are no prior arbitrations between the parties that decide whether the time runs from the date sent or the date received. Allied advised the Union that it was refusing to arbitrate the Brackeen grievance because the request did not comply with the CBA's time limits.

Allied maintains that the Brackeen grievance is not procedurally arbitrable because the Union did not timely grieve Allied's unilateral changes to the drug testing policy. Allied argues that the Union waived the right to challenge the discharge of employees, such as Brackeen, that relate to the drug policy. It contends that because the Union did not timely grieve Brackeen's grievance in connection with the Lowrance grievance challenging the drug policy, the matter was not procedurally arbitrable.

On June 23, 2005 Robert Lopez ("Lopez") was terminated for failing to report an accident and refusing a drug test. Lopez filed a grievance with Correa the same day, and he denied the grievance on June 27, 2005. On July 5, 2005, upon receipt of the first step answer denying the Lopez grievance, Oyer immediately requested arbitration. Allied denied this request on the ground that Lopez had failed to seek a second step review before requesting arbitration. On July 11, 2005 Lopez attempted to filed a second step grievance by presenting it to Allied's COO, who refused to accept the grievance, asserting that Lopez's attempt to appeal his grievance to the second step was untimely because it was

not submitted within seven days of the first step decision. The Union sought to arbitrate Lopez's grievance based on Oyer's July 5, 2005 letter to Brandt requesting arbitration.

Subsequent to the Union's July 5, 2005 request for arbitration, Allied has refused to arbitrate the Lopez grievance, contending that it was not properly processed or timely appealed to the COO at the second step of the grievance procedure, even though the arbitration request was made on the same date Lopez and the Union received the first step answer denying his grievance and on the eleventh day after Lopez filed his grievance.

On May 12, 2005 Allied terminated Robert Rawlinson ("Rawlinson") after he failed a post-accident drug test. On the same day, Rawlinson grieved his termination, which was denied the next day. COO Shiflet received and granted a request from Rawlinson for a second step hearing on May 23, 2005, but he denied the second step grievance. Because the Rawlinson grievance presented complex issues involving both drug testing and whether Allied had a right to require him to submit to the test, the Union's investigation of the Rawlinson grievance and decision to submit it to arbitration was not completed and made until sometime after 15 days from the COO's decision at the second step. By the time the Union decided to arbitrate the Rawlinson grievance, 15 days had already elapsed from the COO's May 26, 2005 decision. The Union knew that Allied would refuse to arbitrate the Rawlinson

grievance, just as it had the Sanford, Lowrance, Brackeen, and Lopez grievances, and that any request to arbitrate would therefore be futile.

The Union filed this suit seeking a declaratory judgment that Allied's refusal to arbitrate the above grievances violated the CBA. It also requests injunctive relief requiring Allied to arbitrate the grievances at issue and preventing Allied from contending before the arbitrator that the grievances are not procedurally arbitrable. Allied counterclaims for a declaration that the grievances at issue were not arbitrable because they were untimely under Article 28.

The Union moves for summary judgement declaring its right to arbitrate the Sanford, Lowrance, Brackeen, Lopez, and Rawlinson grievances, requiring Allied to submit the grievances to final and binding arbitration, and dismissing Allied's counterclaim.

                                    II

Because the Union will have the burden of proof on its claims for a declaratory judgment and injunctive relief, to prevail on its summary judgment motion, it must establish "beyond peradventure all of the essential elements of the[se] claim[s]." *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

"The courts' role is very limited when deciding issues of

arbitrability." *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987) ("*Chevron*"). The court decides only whether the parties agreed to submit the subject matter of the grievance to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "For questions of so-called procedural arbitrability, the arbitrator, not the court, generally decides whether the parties complied with the agreement's procedural rules." *Gen. Warehousemen and Helpers Union Local 767 v. Albertson's Distribution, Inc*., 331 F.3d 485, 488 (5th Cir. 2003) (quotation marks and brackets omitted) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555 (1964)). "'Questions of timeliness are ones of procedural, not substantive, arbitrability.'" *Id*. (citing *Chevron*, 815 F.2d at 341).

"This general rule in favor of the arbitrator's deciding questions of procedural arbitrability has one exception: '[A] court could deny arbitration only if it could confidently be said not only that the claim was strictly "procedural," . . . but also that it should operate to bar arbitration altogether.'" *Id.* (quoting *John Wiley*, 376 U.S. at 557-58). "The [Supreme] Court observed that 'such cases are likely to be rare indeed.'" *Id.* (citing *John Wiley*, 376 U.S. 558). The Fifth Circuit has "interpreted this rare exception to mean that a court will not order arbitration if no rational mind could question that the parties intended for a

procedural provision to preclude arbitration and that the breach of the procedural requirement was clear." *Id.* (quotation marks omitted) (quoting *Chevron*, 815 F.2d at 342).[4]

Neither the Union nor Allied contests that the CBA covers the subject matter of the five grievances at issue or that Allied's refusal to arbitrate the grievances at issue is "procedural."[5] The resolution of the Union's motion for summary judgment thus turns on whether the exception to the rule applies. Because the Union moves for summary judgment on its own claims, to prevail on its motion it must establish beyond peradventure that the exception to *John Wiley* does *not* apply. Stated differently, the Union must establish beyond peradventure that a rational mind could question that the parties intended for the procedural provisions to preclude arbitration and that the breach of the procedural requirement was clear. *See id.* at 490.

---

[4]As will be seen below, this verbal formulation of the exception necessarily results in the court's use of awkward grammatical explanations when attempting to state why the Union has not met its summary judgment burden.

[5]The Union argues, and Allied does not dispute, that Allied's basis for refusing to arbitrate three of the grievances (Sanford, Lowrance, and Brackeen) directly raises the procedural issue whether the Union's requests for arbitration were "untimely," and that its basis for refusing to arbitrate the other two (Lopez and Rawlinson) raises the procedural issue whether the steps of the grievance procedure leading to arbitration were followed.

The court considers first whether, viewing the evidence favorably to Allied as the summary judgment nonmovant, the Union has established beyond doubt that a rational mind could question that the parties intended for the 15-day deadline of Article 28(g) to preclude arbitration.

A

The Union appears to argue, and Allied does not dispute, that to determine whether the parties intended for the 15-day deadline of Article 28(g) to preclude arbitration, an arbitrator would consider the parties' past practices. The Union cites in its brief two grievances that proceeded to arbitration and as to which Allied did not require the Union to comply with the requirement of Article 28(g) that arbitration requests be made within 15 days of the COO's second step decision. It also adduces proof of three arbitrated grievances in which the Union's letter requesting arbitration was mailed to Allied before the fifteenth day, but not received by Allied by the fifteenth day. Finally, the Union relies on evidence of an arbitrated grievance where it maintains Allied did not insist on compliance with Article 28(g)'s requirement that arbitration requests be made in writing, and it processed the grievance to the arbitration stage based only on an oral request.[6]

---

[6]On May 14, 2007 Allied filed objections to the Union's summary judgment evidence. Because the court is denying summary judgment as to four of the five grievances, and because in granting

Allied responds that the evidence, viewed favorably to it, establishes that no reasonable arbitrator could find that the Union met the procedural requirements of the CBA. First, Allied points to the CBA's plain language, which requires that within 15 days of final disposition of the grievance, the Union must provide Allied a written request for arbitration. It is undisputed that the Union failed to provide written notice within the time periods prescribed by the CBA. Accordingly, Allied maintains that for the Union to establish that it could satisfy the CBA's procedural requirements, it must adduce evidence that it complied with the parties' past practices in requesting arbitration of these grievances. Allied argues that the Union failed to comply with the parties' past practices as they existed at the time of the disputed grievances. It maintains that the parties have never completely ignored the deadlines set forth in Article 28; although it was the parties' general practice to comply with the letter of the CBA, on the rare occasion when a deadline was missed, both parties would forgive a missed deadline and operate under the spirit of the agreement; the "past practice" on which the Union relies was discarded in February 2005, when the Union advised Allied it was no longer willing to abide by this practice and would instead insist on strict

---

summary judgment with respect to the Brackeen grievance the court is not relying on evidence to which Allied objects, the court need not address the motion to strike, and it denies the motion without prejudice as moot.

compliance with the deadlines set forth in Article 28; and since the Fernandez grievance, both parties have insisted on strict compliance with the Article 28 deadlines.

The Union replies that the dispute over procedures regarding the parties' past practices in submitting grievances to arbitration is a question for the arbitrator, not the court. It points to evidence that the parties' past practice was not to require literal compliance with Article 28 in requesting arbitration in writing or within 15 days, and it argues that this practice was consistently followed until Allied refused to arbitrate the grievances now at issue. The Union posits that, concerning the filing of the first step answer to a grievance (which was at issue in the Fernandez grievance in February 2005), its view of the parties' past practice is that both the seven-day deadline for filing a grievance and the seven-day deadline for Allied to respond to that grievance under Article 28(f) has always been strictly enforced. Thus it maintains that its insistence that Fernandez be reinstated after Allied missed the seven-day deadline to answer his first step grievance was entirely consistent with the parties' past practice, as the Union viewed it, and did not mark a change in the practice. The Union also points to evidence that, unlike the seven-day deadlines of Article 28(f) for filing and answering a grievance at the first step (to which the parties have always adhered), the past practice that developed regarding the submission of grievances to

arbitration was not to require adherence to Article 28(g)'s requirement that a written arbitration request be given to the other party within 15 days after the COO's second step answer. The Union argues that Allied had long followed the practice of accepting Union requests to arbitrate that were not submitted within 15 days of the COO's answer, or that were not even made in writing, but instead were made orally by telephone.

B

The court concludes that the Union has not met its burden of establishing beyond peradventure that a rational mind could question that the parties intended for the 15-day deadline of Article 28(g) to preclude arbitration. Allied has adduced evidence that after the Union reinstated Fernandez, there was an agreement between Allied and the Union that the deadlines in Article 28 would be strictly enforced from that point forward. Allied points to Brandt's declaration, in which she states:

> Shiflet called me immediately after his discussion with Lowrance and informed me that the union now wanted to strictly enforce the deadlines provided by Article 28 of the CBA. After I learned of this proposition, I personally spoke with Mark Nelson who advised me that Fernandez had to be returned to work because [Allied] had failed to meet its deadline set forth in Article 28. I confirmed with Mr. Nelson that . . . the "rules had changed" and that the parties would now both be expected to strictly comply with the deadlines of Article 28.

D. App. 3. This evidence raises a fact question as to whether the

- 17 -

parties agreed, during the series of conversations related to the Fernandez grievance, that they would thereafter require strict compliance with the 15-day deadline of Article 28(g).

The Union argues that Allied's reinstatement of Fernandez after it failed to respond to his grievance within seven days, as required by Article 28(f), did not change the past practices. It reasons that as to the filing of the first step answer to a grievance, the parties' past practice was that both the seven-day deadline for filing a grievance and the seven-day deadline for Allied to respond under Article 28(f) were strictly enforced. The Union contends that its enforcement of Article 28(f) in the Fernandez case is consistent with its position that the past practice regarding the 15-day deadline for requesting arbitration was to ignore deadlines and to not require that requests for arbitration be in writing.

The court cannot conclude that the Union has established its position beyond peradventure. Although it is possible that the Union can show during arbitration that the past practice was always to strictly enforce the seven-day deadline of Article 28(f), and that nothing changed with respect to the 15-day deadline of Article 28(g) as a result of the Fernandez grievance and the conversations that followed, Allied has adduced contrary evidence that is sufficient to present a genuine issue of material fact. Because the court must view the evidence favorably to Allied as the

nonmovant, it must assume for purposes of this motion that as of February 2005, the parties agreed that they would begin to require strict compliance with the deadlines set forth in Article 28. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that in deciding a summary judgment motion, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Article 28(g) provides that "at the written request of the party hereto desiring arbitration as herein provided, given to the other party hereto within fifteen (15) days after such disposition of such grievance or complaint as provided in paragraph (f) above, the matter shall be submitted for decision to an arbitrator." P. App. 51. Although the Union argues that the past practice was not to follow the deadlines in Article 28(g), it has not presented evidence, or even argued, that although the parties agreed to abide by the deadlines in Article 28(g), they did not intend for a failure to comply with them to operate as a bar to arbitration. The court must therefore assume, based on the evidence adduced by Allied, that the parties intended the "past practices" to change so that, after February 2005, a failure to make a written request to arbitrate within 15 days of the COO's second step decision would bar arbitration. Accordingly, the court holds that the Union has not established beyond peradventure that a rational mind could question that the parties intended for the 15-day deadline of

Article 28(g) to preclude arbitration.

IV

Assuming *arguendo* that a rational mind could question that the parties intended for the 15-day deadline in Rule 28(g) to preclude arbitration, the court next considers whether the Union has established beyond peradventure that a rational mind could question that the breach of the procedural requirements of Article 28 was clear.

A

The court begins by considering in tandem the Sanford and Lowrance grievances. On April 21, 2005 COO Shiflet denied Sanford's grievance at the second step. The Union has adduced evidence that it orally notified Brandt of its intent to arbitrate the Sanford grievance a couple of days after COO Shiflet's denial, and then again on May 5. COO Shiflet denied Lowrance's grievance at the second step on May 3. The Union has produced evidence that Nelson orally advised Brandt on May 5 that the Union intended to arbitrate the Lowrance grievance. The alleged oral notifications for both the Sanford and Lowrance grievances occurred within 15 days of the denial of the grievances at the second step. The Union argues, *inter alia*, that a rational arbitrator could conclude that both the Sanford and Lowrance grievances were procedurally arbitrable, based on the Union's evidence that the parties had a practice of submitting grievances to arbitration based only on the

- 20 -

Union's oral request, even if that request was not followed up in writing. It has presented proof that in both the Sanford and Lowrance grievances, it orally advised Allied well within the 15-day period of its request to arbitrate both grievances.

Allied responds that the CBA clearly provides that a request must be written; under the parties' past practices, the Union gave written notice of its intent to arbitrate a grievance; and although on occasion the Union may have orally notified Brandt that it intended to arbitrate a particular grievance, the Union always followed up the oral notice with a written arbitration request. Brandt avers that "[s]ince February 2005, I know of no oral request for arbitration that I have accepted without also having received a written request for arbitration from the Union within the time limits set forth in Article 28(g)." D. App. 4. Allied has also adduced evidence that no Union member, including Nelson, ever contacted Brandt, orally or in writing, within 15 days of the COO's denying Sanford's grievance or within 15 days of the COO's denying Lowrance's grievance, to request arbitration.

Without deciding whether an oral notification within the 15-day deadline, followed by a written request made outside of the 15-day deadline, would be consistent with past procedures and thus enable a rational mind to question whether there was a breach,[7] the

---

[7]Allied argues in response that, as of February 2005, the "past practices" changed to require strict compliance with the *deadlines* of Article 28(g). It is undisputed that the parties had

court holds that the Union has failed to establish that no rational mind could question that the breach of the procedural requirement was clear. This is because, viewing the evidence favorably to Allied, the court must conclude that there was no oral notification.

B

The court next addresses the Brackeen grievance. On May 26, 2005 Allied's COO denied Brackeen's second step appeal. The Union maintains that Oyer received the second step answer at the Union Hall on June 8, 2005 and mailed Brandt a letter that same day requesting arbitration. Allied received Oyer's letter on June 14. By the time Oyer received the second step answer to Brackeen's grievance, he was aware that Allied was positing that the Union was required to request arbitration in writing within 15 days of the disposition of the second step grievance. The Union maintains that because June 8 was 13 days from May 26 (i.e., the date of the COO's decision at the second step), Oyer believed that mailing the request for arbitration by certified mail on that date complied with the provision of Article 28(g) that the Union's request for

---

a past practice of permitting an oral request for arbitration, followed by a written request. Although Allied has adduced evidence of Brandt's statement that "[s]ince February 2005, I know of no oral request for arbitration that I have accepted without also having received a written request for arbitration from the Union within the time limits set forth in Article 28(g)," D. App. 4, it does not argue that the practice of permitting an oral request followed by a written request changed.

arbitration be given within 15 days.  It argues that because the parties' past practice had never before required compliance with the 15-day deadline to request arbitration, it is an open question of contract interpretation whether the 15-day period for the request to be "given" under Article 28(g) runs from the date of each party's receipt, or the date of each party's posting with respect to both Allied's second step answer and the Union's request to arbitrate.  The Union maintains that if the days are to be counted from the dates the respective parties received the decision and arbitration request, the arbitration request was timely because the Union received the second step decision on June 8 and Brandt received the Union's request on June 14.  Alternatively, the Union argues that if the time runs from the date of each party's posting, then the Union mailed its request on the thirteenth day after the COO made, and presumably mailed, his decision, which again was clearly within the 15-day period.  In either case, the Union reasons that its request to arbitrate the Brackeen grievance was timely under the literal language of Article 28(g), having been given within the 15-day period, so a rational arbitrator would have no trouble ruling that the Union's request to arbitrate the Brackeen grievance was timely and therefore procedurally arbitrable, because the requirements of Article 28(g) had been met.

Allied responds that Brandt did not receive a written request to arbitrate Brackeen's grievance within 15 days of COO Shiflet's

decision. Allied does not address the Union's argument that the 15-day period should be calculated either from the date of each party's receipt, or the date of each party's posting with respect to both Allied's second step answer and the Union's request to arbitrate. Under either calculation method, the Union would have provided notice within 15 days.

Because Allied has not adduced evidence that would contradict the Union's argument that there was no breach of the 15-day deadline provision as to Brackeen's grievance, the court concludes that the Union has established beyond peradventure that a rational mind could question that the breach the 15-day deadline with respect to the Brackeen grievance was clear. Accordingly, the court grants the Union's motion for summary judgment on the Brackeen grievance, and it orders that the grievance proceed to final and binding arbitration. The arbitrator will determine whether the Union complied with the procedural requirements of Article 28(g).

C

The Union has adduced no evidence that would establish that a rational mind could conclude that the Union complied with the 15-day deadline of Article 28(g) concerning the Rawlinson grievance. It is undisputed that there was no oral or written notification of an intent to arbitrate the grievance within 15 days of COO Shiflet's denial of Rawlinson's second step grievance.

Accordingly, the court is unable to hold that the Union has established beyond peradventure that a rational mind could question that the breach of the provisions of Article 28(g) concerning the Rawlinson grievance was clear.

D

Lopez was terminated on June 23, 2005 and filed a grievance that same day, which was denied on June 27. When on July 5 the Union received the first step answer denying the grievance, Oyer immediately requested arbitration of the grievance through a letter dated and mailed to Brandt on July 5. When Allied refused arbitration on the procedural ground that Lopez had not presented a second step grievance to the COO, Lopez attempted on July 11, 2005 to present a second step grievance. COO Shiflet refused to accept Lopez's grievance at the second step, arguing that his attempt to appeal his grievance to the second step was untimely because it was not submitted within seven days of the first step decision. The Union argues that Article 28(f) and (g) contain no time limit for the grievant to appeal a grievance to the second step. It therefore maintains that Allied was obligated under the contractual grievance procedure to accept Lopez's second step grievance and that Allied was obligated to accept the Union's July 5 request to arbitrate, because Allied refused to answer the grievance at the second step and the arbitration request was timely made, considering the procedural circumstances of this grievance.

Allied responds that the Union has failed to offer any reasonable excuse for why it failed to comply with the second step of the Lopez grievance. It maintains that the evidence clearly establishes that the parties' practice had always been to require the second step before arbitration could take place. Specifically, Allied points to the declaration of COO Shiflet, in which he states

> I understand the union claims that a 2nd step hearing is not required prior to a request for arbitration. This is false. Both steps must be completed in order for arbitration to occur. I know of no occasion when the company agreed to arbitrate a grievance before both steps were completed.

D. App. 13.

The Union has not established beyond peradventure that a rational mind could question that the breach of the arbitration procedures regarding the Lopez grievance was clear. Allied has adduced evidence that it was the parties' past practice to require a second step grievance before the Union would be permitted to file a request for arbitration. Accepting Allied's evidence as true, the Union did not wait to file a request for arbitration until after the second step grievance was denied.

*    *    *

Accordingly, the court grants the Union's April 2, 2007 motion for summary judgment as to the Brackeen grievance, but denies the motion with respect to the remaining four grievances. The court has today filed a Fed. R. Civ. P. 54(b) final judgment compelling

the Union and Allied to submit the Brackeen grievance to final and binding arbitration.

      **SO ORDERED.**

July 31, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE